# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAMON ATKINS,<br>         Plaintiff,<br><br>v.<br><br>CITY OF READING, EDDIE MORAN, RICHARD TORNIELLI, BRADLEY T. MCCLURE, and COURTNEY DUPREE,<br>         Defendants. | Civil Action No.<br><br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

NOW COMES Plaintiff, Damon Atkins, by and through undersigned counsel, who hereby submits this Complaint and states the following:

## PARTIES

1. Plaintiff, Damon Atkins, ("Atkins") is an adult residing in Reading, Berks County, Pennsylvania.

2. Defendant, City of Reading ("Reading" or "City") is a city of the third class under Pennsylvania law, situated in Berks County, Pennsylvania, and governed under a home rule charter.

3. The City of Reading organizes and employs police officers within the Reading Police Department.

4. Defendant, Eddie Moran, was the incumbent Mayor of the City of Reading on June 3, 2023.

5. Attached as Exhibit A is a true and correct copy of Section 308 of the Home Rule Charter of the City of Reading that was in force on June 3, 2023.

6. Attached as Exhibit B is a true and correct copy of Chapter 77 of the Reading Code of Ordinances that was in force on June 3, 2023.

1

7.  Exhibits A and B are incorporated by reference.

8.  Defendant, Richard Tornielli, was the incumbent Chief of Police of the City of Reading on June 3, 2023.

9.  Defendant Sergeant Bradley T. McClure ("Sgt. McClure") is employed by the City of Reading as a Sergeant with its police department.

10. Defendant Courtney Dupree ("Officer Dupree") is employed by the City of Reading as an Officer with its police department.

## JURISDICTION AND VENUE

11. Atkins brings this action under 42 U.S.C. §1983.

12. This Court has original subject matter jurisdiction under 28 U.S.C. § 1331, because the claims arise under the laws of the United States.

13. Venue is properly brought in this District pursuant to 28 U.S.C. § 1391 (b)(1) and (b)(2) because Defendants are situated in this judicial district and because a substantial part of the acts, omissions, or both, occurred in this judicial district.

## GROUNDS

14. The foregoing paragraphs are incorporated by reference as if set forth herein.

15. During the afternoon on or about Saturday, June 3, 2023 ("June 3rd"), several persons were peacefully assembled for a demonstration on a public sidewalk in the City of Reading, specifically on the 800 block of Washington Street. At that location, they stood on the southside of the public sidewalk, opposite the Reading City Hall, to demonstrate against the 1st Reading Pride March & Rally.

16. At such time and location, the 1st Reading Pride March & Rally was scheduled to begin with a flag-raising ceremony followed by marching to the City park. On information and belief,

such event was co-organized by the City of Reading and by a private organization, the Reading Pride Celebration.

17. At the event, the Reading Pride Celebration had brought a microphone system, with loudspeakers, for the use of the event organizers.

18. On information and belief, Mayor Eddie Moran was present during all relevant times of the 1st Reading Pride March & Rally, including the flag-raising ceremony.

19. "Pride Month" is a celebration and promotion of the Lesbian, Gay, Bisexual, Transgender, and Queer/Questioning ("LGBTQ") lifestyle during the month of June.

20. Damon Atkins proclaims sincere religious beliefs, including a belief in the existence of a God as revealed only through The Bible; that the practice and promotion of homosexuality is sinful and highly offensive to God; that all persons are created in God's image but as a binary "male and female he created them" (*Gensis* 1:27 (KJV)); and that all sexual conduct outside of a monogamous marriage between one man and one woman is sin.

21. Atkins believes that those who commit sin should be warned of the dangers of sin, which Atkins believes he learned "the hard way" through life experience rather than through teaching, and where the ultimate punishment for unrepented sin is eternal punishment in the afterlife.

22. Atkins further believes, as a matter of his religious faith, that persons who disregard the Bible's teaching on the foregoing matters, and who do not accept Jesus Christ as the only son of God and the only means of obtaining forgiveness from God for sinful behavior, are not reconciled with God and spiritually are not "born again."

23. Before Atkins arrived at the 800 block of Washington Street on June 3rd, Sgt. Bradley T. McClure directed all demonstrators to stand on the public sidewalk on the southside of the 800 block of Washington Street, while persons who supported the flag-raising ceremony could stand

on the northside of that street. Sgt. McClure also attempted to chill, and did in fact chill, the speech of the persons standing on the southside by asserting that they cannot call out to the people on the northside.

24. Upon information and belief, other speakers complied for fear of arrest or prosecution and thus stifled their own First Amendment-protected speech. This acted as prior restraint on speech in violation of the Constitution.

25. Before Atkins arrived, Sgt. McClure and Officer Courtney Dupree stood in the street, in-between persons standing on the northside and southside public sidewalks.

26. During the foregoing demonstration, no one was agitated — neither those who supported Pride Month standing on the northside of the street nor those on the southside who were demonstrating or street-preaching.

27. During the foregoing demonstration, an encounter between Atkins and Sgt. McClure was videorecorded and subsequently uploaded onto YouTube.com.

28. During the foregoing demonstration, Atkins arrived with the intent to proselytize his religious viewpoints. He then and there held a sign that stated, "JESUS SAID GO AND SIN NO MORE," and he wore a t-shirt which contained text, "YOU MUST BE BORN AGAIN."

29. During the foregoing demonstration, at no point did Atkins engage in vulgar, obscene or profane language, shout any insults, or hurl any object directed towards the flag-raising ceremony. In fact, Atkins was deprived of any meaningful opportunity to participate in the demonstration as shown by the Defendants' conduct.

30. The timeframe between Atkins' arrival at the demonstration and his arrest by the Reading Police **was less than 30 seconds** as proven by video recording.

31. When Atkins arrived at the demonstration, he stood quietly on the southside of the street.

Immediately upon the arrival of Atkins, Sgt. McClure noticed and approached him and ordered him to "respect" the flag-raising ceremony. In response, Atkins informed Sgt. McClure, "This is public property. You don't need to say anything to me" and "God cares. This is public property. You know who's cheering for this? The people that are in hell," and he further told Sgt. McClure to mind his own business and that Atkins will mind his own.

32. Sgt. McClure, visibly offended by Atkins' assertion of constitutional rights, took a few steps away and turned his back. At that point, Atkins called out, projecting his voice to the northside of the street, "Yo, God is not—" and at that very moment, Sgt. McClure lunged at Atkins, interrupting him mid-sentence, and placed his hands behind his back and began handcuffing him. The arrest of Atkins was assisted by Officer Dupree and one additional police officer whose identity is known to the Defendants, both of whom failed to intervene for Atkins' protection and joined in the unlawful conduct of Sgt. McClure.

33. Where Atkins was interrupted mid-sentence, he was attempting to paraphrase 1 *Corinthians* 14:33 (KJV), "For God is not the author of confusion, but of peace . . ."

34. At the moment that Atkins spoke, none of the event organizers for the 1st Reading Pride March & Rally were speaking; Atkins was not screaming; and the volume of Atkins' voice did nothing to prevent or hamper such event.

35. While Atkins was handcuffed, the crowd on the northside of the street clapped their hands, laughed, and cheered, to the personal humiliation of Atkins.

36. While in handcuffs, Atkins attempted to finish his sentence, "God is not the author of," but then Sgt. McClure pulled him back and pressed him against the wall of a building in order to prevent him, a second time, from speaking.

37. At no point did Atkins resist arrest.

38. After taking Atkins to a police barracks for the Reading Police Department, Sgt. McClure charged Atkins with a criminal offense under the Pennsylvania Crimes Code, namely, Disorderly Conduct Engage In Fighting (18 Pa C.S. § 5503(a)(1)). McClure alleged that Atkins, "with intent to cause substantial public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he engages in fighting or threatening, or in violent or tumultuous behavior. The defendant, despite being warned by police just moments prior, yelled derogatory comments at an organization that was holding a permitted event, in violation of Section 5503(a)(1) of the PA Crimes Code."

39. At the time of submitting that criminal charge, Sgt. McClure knew it was false and that he had no probable cause of any offense for the arrest of Atkins.

40. The Office of the Berks County District Attorney refused to prosecute the charged crime against Atkins on the ground of insufficient evidence, and the criminal proceeding terminated in favor of Atkins.

41. Eddie Moran, Mayor of the City of Reading, who was present during the incident and after having further opportunity to investigate the same, made a public statement: "With regard to the incident, the City respects the First Amendment rights of all individuals. However, freedom of speech does not include the right to disrupt an organized event and interfere with the rights of others."

42. Richard Tornielli, Chief of Police for the Reading Police Department, after having opportunity to investigate the incident, made a public statement: "Our officers gave him warnings to cease that behavior as it was disrupting the event that was taking place."

43. The foregoing statements by Eddie Moran and Richard Tornielli are false and were willfully and wantonly made by them to harm Atkins' reputation.

44. Tornielli further told journalists, including 69News / WFMZ-TV, "Since the arrest of Damon Atkins, the Reading Police Department Communications Center has been inundated with phone calls from individuals voicing complaints about the arrest." Tornielli further stated, "These harassing phone calls have distracted our communication personnel from fielding calls related to incidents taking place in the City of Reading. This potentially creates a dangerous situation causing delays in police responses." Tornielli further told journalists, including 69News / WFMZ-TV, that these phone calls "contained inappropriate and vile language," and the "Reading Police Department and our partner law enforcement agencies are investigating the calls which have contained threatening language and will pursue charges where appropriate."

45. Tornielli made the foregoing statements to further chill the speech of Americans who, as a redress of grievances, oppose what the City of Reading did to Atkins and people like him, to deflect having to accept responsibility for the constitutional violations in the arrest of Atkins by playing the role of a victim, and to further demean and harm Atkins' reputation.

46. The foregoing statements by Eddie Moran and Richard Tornielli were published by news media services and publicly disseminated over the Internet.

47. Moran and Tornielli have policymaking authority.

48. Based on the foregoing, the City of Reading ratified or acquiesced to the conduct by Sgt. McClure and the officers who assisted him in arresting Atkins, establishing what happened as custom or policy of the City.

49. Based on the foregoing, it is the policy of the City of Reading to accord a privileged status to the LGBTQ Pride movement, which privileged status equates any dissenting viewpoint from LGBTQ identity politics, or from the public promotion of LGBTQ practice, as "derogatory comments," "insults" and "hate speech" which must be chilled and suppressed, including by

force of the Reading Police Department.

50. On information and belief, it is the policy of the City of Reading to use disorderly conduct as a pretextual arrest to chill, suppress, and retaliate against protected speech by evangelical Christians, and by any person or organization that dissents from the LGBTQ Pride agenda.

51. On information and belief, it is the policy of the City of Reading to instigate, request, or engage in pretextual, warrantless arrests as a means of discriminating or retaliating against the viewpoints expressed in opposition to LGBTQ Pride.

52. Based on the foregoing, Defendants' actions, singularly or combined, were so outrageous as to demonstrate willful, wanton or reckless disregard for the rights of Plaintiff.

## COUNT ONE: FIRST AMENDMENT RETALIATION
## (42 U.S.C. § 1983)

53. The foregoing averments are repeated.

54. Based on the foregoing, Defendants, or any of them, acted in retaliation of Plaintiff's viewpoints and in violation of his rights under the First Amendment of the U.S. Constitution.

55. Based on the foregoing, Plaintiff is entitled to relief under 42 U.S.C. § 1983.

**WHEREFORE**, Plaintiff requests the court enter judgment in favor of Plaintiff and against Defendants City of Reading, Bradley T. McClure, and Courtney Dupree for damages, including punitive damages as to Eddie Moran, Richard Tornielli, Bradley T. McClure and Courtney Dupree, as well as for costs and attorneys' fees; and such other relief as the court deems necessary, just, or appropriate.

## COUNT TWO: FOURTH AMENDMENT VIOLATION
## (42 U.S.C. § 1983)

56. The foregoing averments are repeated.

57. Based on the foregoing, Defendants, or any of them, unlawfully seized and arrested Plaintiff in violation of the Fourth Amendment of the U.S. Constitution.

58. Based on the foregoing, Plaintiff is entitled to relief under 42 U.S.C. § 1983.

**WHEREFORE**, Plaintiff requests the court enter judgment in favor of Plaintiff and against Defendants City of Reading, Eddie Moran, Richard Tornielli, Bradley T. McClure, and Courtney Dupree for damages, including punitive damages as to Eddie Moran, Richard T. Tornielli, Bradley T. McClure and Courtney Dupree; and such other relief as the court deems necessary, just, or appropriate.

## COUNT THREE: MALICIOUS PROSECUTION
### (42 U.S.C. § 1983)

59. The foregoing averments are repeated.

60. Based on the foregoing, Defendants initiated criminal proceedings which ended in Plaintiff's favor, and such proceedings were initiated without probable cause; the Defendants, or any of them, acted maliciously or for a purpose other than bringing Plaintiff to justice; and Plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

61. Based on the foregoing, Defendants, or any of them, conspired to do the same and acted in furtherance of such conspiracy, or both.

62. Based on the foregoing, Plaintiff is entitled to relief under 42 U.S.C. § 1983.

**WHEREFORE,** Plaintiff requests the court enter judgment in favor of Plaintiff and against Defendants City of Reading, Eddie Moran, Richard Tornielli, Bradley T. McClure, and Courtney Dupree for damages, including punitive damages as to Eddie Moran, Richard T. Tornielli, Bradley T. McClure and Courtney Dupree, as well as for costs and attorneys' fees; and such other relief as the court deems necessary, just, or appropriate.

## COUNT FOUR: FAILURE TO TRAIN
## (42 U.S.C. § 1983)

63. The foregoing averments are repeated.

64. Based on the foregoing, the City of Reading, Eddie Moran, and Richard Tornielli have failed to train their police officers or employees on the protections of the First Amendment of the U.S. Constitution, under circumstances evidencing a reckless indifference to the rights of others, specifically, as follows:

(a) Offensive speech is protected regardless of whether it "stirs the public to anger, invites dispute, brings about a condition of unrest, or creates a disturbance," <u>Terminiello v. City of Chicago</u>, 337 U.S. 1, 4 (1949) (quotation omitted), because "[g]iving offense is a viewpoint." <u>Matal v. Tam</u>, 582 U.S. 218, 243 (2017).

(b) The right to demonstrate on public property is not subject to a "Heckler's Veto," that is, "[C]onstitutional rights may not be denied simply because of hostility to their assertion or exercise" by any person, whether physically present or not, <u>Watson v. Memphis</u>, 373 U.S. 526, 535 (1963).

(c) "[N]o official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion," <u>West Virginia Bd. of Educ. v. Barnette</u>, 319 U.S. 624, 642 (1943), including agreement or disagreement with LGBTQ morality.

65. In fact, more outrageously, the public comments made by Mayor Moran and Chief Tornielli in response to this incident are clear the City of Reading expressly targets persons like the Plaintiff for engaging in constitutionally protected activity.

66. The failure to train on part of the foregoing defendants created an unreasonable risk of violations of constitutional rights of Plaintiff and Evangelical Christians like the Plaintiff, under the First and Fourth amendments of the U.S. Constitution.

67. Based on the foregoing, Plaintiff is entitled to relief under 42 U.S.C. § 1983.

**WHEREFORE,** Plaintiff requests the court enter judgment in favor of Plaintiff and against Defendants City of Reading, Eddie Moran, and Richard Tornielli for damages; and such other relief as the court deems necessary, just, or appropriate.

### COUNT FIVE: DEFAMATION (PENNSYLVANIA LAW)

68. The foregoing averments are repeated.

69. Plaintiff was not a public figure before his arrest on June 3, 2023.

70. Eddie Moran, Richard T. Tornielli, or both or either of them, published defamatory statements that applied to the Plaintiff, with actual malice and harm to Plaintiff's character and reputation, and which were understood by the recipients of its defamatory meaning and its application to Plaintiff, and such statements were not privileged.

**WHEREFORE,** Plaintiff respectfully requests the court enter judgment in favor of Plaintiff and against Defendants Eddie Moran and Richard T. Tornielli for damages, including punitive damages; and such other relief as the court deems necessary, just, or appropriate.

### COUNT SIX: FALSE LIGHT (PENNSYLVANIA LAW)

71. The foregoing averments are repeated.

72. Plaintiff was not a public figure before his arrest on June 3, 2023.

73. Eddie Moran, Richard T. Tornielli, or both or either of them, gave publicity to a matter concerning Plaintiff which placed him before the public in a false light, which would be highly offensive to a reasonable person; they had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which Plaintiff would be placed; and such statements were not privileged.

74. Such statements by Moran and Tornielli were disseminated through the community and

over the Internet and seen by millions of people, to the harm of Plaintiff's character and reputation.

**WHEREFORE,** Plaintiff respectfully requests the court enter judgment in favor of Plaintiff and against Defendants Eddie Moran and Richard T. Tornielli for damages, including punitive damages; and such other relief as the court deems necessary, just, or appropriate.

### COUNT SEVEN: FALSE IMPRISONMENT (PENNSYLVANIA LAW)

75. The foregoing averments are repeated.

76. Based on the foregoing, Bradley T. McClure and Courtney Dupree, or any of them, are liable to Plaintiff for the tort of false imprisonment under Pennsylvania law, having caused the detention of Plaintiff and such detention was unlawful.

77. Based on the foregoing, the foregoing Defendants were not privileged as a matter of law.

78. Based on the foregoing, the foregoing Defendants, or any of them, conspired to do the same and acted in furtherance of such conspiracy, or both.

**WHEREFORE,** Plaintiff respectfully requests the court enter judgment in favor of Plaintiff and against Defendants Bradley T. McClure and Courtney Dupree for damages, including punitive damages, as well as for costs and attorneys' fees; and such other relief as the court deems necessary, just, or appropriate.

### COUNT EIGHT: MALICIOUS PROSECUTION (PENNSYLVANIA LAW)

79. The foregoing averments are repeated.

80. Based on the foregoing, and under Pennsylvania law, Bradley T. McClure and Courtney Dupree instituted criminal proceedings against the Plaintiff, without probable cause, with malice, and such proceedings terminated in favor of the Plaintiff.

81. Based on the foregoing, Bradley T. McClure and Courtney Dupree, or any of them,

conspired to do the same and acted in furtherance of such conspiracy, or both.

**WHEREFORE,** Plaintiff requests the court enter judgment in favor of Plaintiff and against Defendants Bradley T. McClure and Courtney Dupree for damages, including punitive damages, as well as for costs and attorneys' fees; and such other relief as the court deems necessary, just, or appropriate.

### COUNT NINE: ASSAULT AND BATTERY (PENNSYLVANIA LAW)

82. The foregoing averments are repeated.

83. Based on the foregoing, Sergeant Bradley T. McClure and Courtney Dupree, or either of them, are liable to Plaintiff for the torts of assault and battery under Pennsylvania law, having placed Plaintiff in apprehension of harmful or offensive contact and did, in fact, engage in harmful or offensive contact of Plaintiff's person.

84. Based on the foregoing, such Defendants were not privileged as a matter of law.

85. Based on the foregoing, such Defendants, or either of them, conspired to do the same and acted in furtherance of such conspiracy, or both.

**WHEREFORE,** Plaintiff requests the court enter judgment in favor of Plaintiff and against Defendants Bradley T. McClure and Courtney Dupree for damages, including punitive damages, as well as for costs and attorneys' fees; and such other relief as the court deems necessary, just, or appropriate.

Respectfully submitted,

**CORNERSTONE LAW FIRM, LLC**

Dated: July 18, 2023          By:   /s/ Joel A. Ready
                                    Joel A. Ready, Esquire
                                    Attorney I.D. #321966
                                    8500 Allentown Pike, Ste. 3
                                    Blandon, PA 19510
                                    joel@cornerstonelaw.us