IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAMON ATKINS,<br>　　　　Plaintiff,<br><br>　　　　v.<br><br>CITY OF READING, et al.,<br>　　　　Defendants. | C.A. No. 5:23-CV-02732-JMG |

| | |
|---|---|
| ADEN RUSFELDT,<br>　　　　Plaintiff,<br><br>　　　　v.<br><br>CITY OF READING, et al.,<br>　　　　Defendants. | C.A. No. 5:23-CV-01523-JMG |

**BRIEF IN SUPPORT OF MOTION FOR RELIEF FROM PROTECTIVE ORDER BY DAMON ATKINS, ADEN RUSFELDT, AND CORNERSTONE LAW FIRM, LLC**

Damon Atkins and Aden Rusfeldt (together, the "Plaintiffs"), and Cornerstone Law Firm, LLC respectfully submit this Brief in support of their Motion for Relief from Protective Order.

**STATEMENT OF RELEVANT FACTS**

Plaintiffs' counsel signed a Stipulation of Confidentiality and, on February 5, 2024, this Court approved the same, making it an order of Court. [ECF No. 16]. In doing so, Plaintiff relied upon representations by defense counsel that Defendant City of Reading possessed confidential information, concerning personnel files and other material. Defendants disclosed the personnel files for Bradley McClure, Paige Stuart, and Courtney Duprey—and Plaintiffs have no objection to confidentiality as to that material. However, as shown in Exhibit A (filed under seal), an assertion of confidentiality is manifestly incorrect as applied to general orders by the Reading Police Department, and Defendants improperly seek to unfairly burden the Plaintiffs in the above-

1

captioned cases and hinder Cornerstone Law Firm, LLC from representing future plaintiffs.

Exhibit A contains General Orders by the Chief of Police for the City of Reading:

| General Order No. | Subject | Bates Number |
|---|---|---|
| 202 | Chief's Authority | Reading 000061 to 62 |
| 219 | Special Events | Reading 000063 to 64 |
| 305 | Job Description | Reading 000065 to 69 |
| 306 | Job Assignments | Reading 000070 to 71 |
| 402 | Chain of Command | Reading 000072 to 76 |
| 601 | Command Authority during the Absence of Chief of Police | Reading 000077 |
| 801 | Constitutional Requirements | Reading 000078 to 82 |
| 1402 | Internal Affairs Investigations | Reading 000083 to 89 |
| 1403 | Citizen Complaints | Reading 000090 to 94 |
| 304 | Job Classification | Reading 000095 to 96 |
| 602 | Arrest Authority | Reading 000097 to 100 |

From the Court's in camera review of these documents, filed under seal, the Court will observe these documents are generalized and contain no information specific to any individual police investigation. For the reasons stated in the Argument Section, neither State nor federal law recognizes any confidentiality in this material. Plaintiffs desire to argue to the Court whether General Order No. 602, Part III(C)(2) [Bates No. Reading 000098] is an unconstitutional policy of the City of Reading. We should not be burdened with having to file that document under seal in the Plaintiffs' respective cases. This issue will be litigated before the Court, in Atkins, by way of forthcoming summary judgment practice. The same issue will be litigated before the Court, in Rusfeldt, in the pending Motion for Leave to File Amended Complaint and Other Relief. In both cases, the parties will litigate whether the City of Reading is liable under the familiar Monell standard through a failure-to-train theory and the general orders of the Police Department will need

to be presented to the Court, and there's no reason the same must be filed under seal and the general public has an interest in accessing the Court's records in these cases.

In ECF No. 16, the Stipulation of Confidentiality contains restrictions on "policies and procedures," whether or not the Defendants designated the same as confidential:

(1)     Paragraph 3(c) prohibits Plaintiffs' counsel from disclosing the aforementioned documents to "any person" or to "use such documents for any purpose other than this litigation" [ECF No. 16 ¶ 3(c)], which prohibits Cornerstone Law Firm, LLC from using the documents in any future litigation against the City of Reading and its police officers.

(2)     Paragraph 3(e) requires Plaintiffs' counsel to destroy the aforementioned documents at the close of this litigation and certify to defense counsel that this was done.

(3)     Paragraph 4 repeats the same restriction that Cornerstone Law Firm, LLC may not use the foregoing documents in any future litigation against the City of Reading and its police officers.

(4)     Paragraph 8 forces the court reporter to bind any exhibits during a deposition if the exhibits contain the aforementioned documents.

(5)     Paragraph 10 forces the Plaintiffs to file the aforementioned documents under seal if the same were marked "CONFIDENTIAL" by the Defendants.

Under the Stipulation of Confidentiality, "Counsel for the Parties, at any time, may request that Reading Defendants withdraw, as applicable, the designation of "CONFIDENTIAL" with respect to any information, document and/or other tangible thing asserted by Reading Defendants to be confidential." [ECF No. 16 ¶ 15]. "If Reading Defendants do not agree to withdraw the contested designation with respect to the information, document and/or other tangible thing in question, they may thereupon move the Court for entry of an Order maintain the confidentiality of the information, document and/or other tangible thing in question." [Id.].

The Stipulation of Confidentiality was signed by this Court in the Atkins case (ECF No. 16), but under Paragraph 7 the same restrictions apply to the Rusfeldt case.

On April 24, 2024, Plaintiffs submitted a written request to Defendants under the Stipulation of Confidentiality, asking to modify the same to release any requirements as applied to the aforementioned general orders and to remove the "CONFIDENTIALITY" designation that was applied to General Order Nos. 402 (Chain of Command) and 1402 (Internal Affairs Investigations). [Ex. B]. In the same letter, Plaintiffs' counsel further provided defense counsel with copies of the proposed Amended Complaint in Rusfeldt and asked for consent to file the same. On April 26, 2024, defense counsel gave notice that there was no agreement on any request and Defendants oppose this Motion.

## **STANDARD OF REVIEW**

Courts have inherent power to grant orders of confidentiality over materials not in the court file and to modify or supersede discovery stipulations. Pansy v. Borough of Stroudsburg, 23 F.3d 772, 785 (3d Cir. 1994); Fed. R. Civ. P. 29. "In the context of discovery, it is well-established that a party wishing to obtain an order of protection over discovery material must demonstrate that 'good cause' exists for the order of protection." Pansy, 23 F.3d at 786. "Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure," id. (quotation omitted), such as "annoyance, embarrassment, oppression, or undue burden or expense," Fed. R. Civ. P. 26(c)(1). "The injury must be shown with specificity," and "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." Pansy, 23 F.3d at 786 (quotation omitted). "The burden of justifying the confidentiality of each and every document sought to be covered by a protective order" mains on the party seeking closure. Id. at 786-87.

4

"The appropriate approach in considering motions to modify confidentiality orders is to use the same balancing test that is used in determining whether to grant such orders in the first instance, with one difference: one of the factors the court should consider in determining whether to modify the order is the reliance by the original parties on the confidentiality order." Pansy v. Borough of Stroudsburg, 23 F.3d 772, 790 (3d Cir. 1994). "The party seeking to modify the order of confidentiality must come forward with a reason to modify the order." Id. "Once that is done, the court should then balance the interests, including the reliance by the original parties to the order, to determine whether good cause still exists for the order." Id.

## ARGUMENT

**I.     The Court's Protective Order was Improvident as Applied to General Policies and Procedures and Should be Modified.**

The Court should find the Third Circuit's decision in Pansy v. Borough of Stroudsburg, 23 F.3d 772 (3d Cir. 1994) to be directly on point. There, the Third Circuit vacated and remanded a trial court's refusal to modify a confidentiality order over a settlement agreement and reversed the trial court's denial of intervention by certain nonparty newspaper companies. In the application of the balancing test, the Third Circuit agreed that reliance of the original parties on the protective order is not determinative if dealing "with a blanket order, because it is by nature overinclusive." Id. at 790 (quotation omitted). Reliance is also not determinative where a protective order was "improvidently granted," id. (quotation omitted). "Improvidence in the granting of a protective order is a justification for lifting or modifying the order." Pansy, 23 F.3d at 790 (quotation omitted). "It would be improper and unfair to afford an order presumptive correctness if it is apparent that the court did not engage in the proper balancing to initially determine whether the order should have been granted." Id.

In that case, the Third Circuit also addressed modification of a confidentiality order where

5

it involved a government entity: "[P]rivacy interests are diminished when the party seeking protection is a public person subject to legitimate public scrutiny." Pansy v. Borough of Stroudsburg, 23 F.3d 772, 787 (3d Cir. 1994) (citation omitted). Furthermore, if a stipulation or protective order "involves matters of legitimate public concern, that should be a factor weighing against entering or maintaining an order of confidentiality." Id. at 788. Additionally, under the balancing test, the courts must consider if the requested material will "likely be accessible under the Pennsylvania Right to Know Act," id. at 791. Confidentiality orders cannot "frustrate, if not render useless, federal and state freedom of information laws." Id. Therefore, "where a governmental entity is a party to litigation, no protective, sealing or other confidentiality order shall be entered without consideration of its effect on disclosure of government records to the public under state and federal freedom of information laws." Id. (quotation omitted). "An order binding governmental entities shall be narrowly drawn to avoid interference with the rights of the public to obtain disclosure of government records and shall provide an explanation of the extent to which the order is intended to alter those rights." Id. (quotation omitted).

"To provide some measure of uniformity and predictability of outcome in this important area, we hold that where it is likely that information is accessible under a relevant freedom of information law, a strong presumption exists against granting or maintaining an order of confidentiality whose scope would prevent disclosure of that information pursuant to the relevant freedom of information law." Pansy, 23 F.3d at 791. "In the good cause balancing test, this strong presumption tilts the scales heavily against entering or maintaining an order of confidentiality." Id. The courts can either limit the scope of the confidentiality order or add a proviso that the order "will become inoperative if the information it orders confidential is later determined to be available under a freedom of information law." Id.

6

With that framework in mind, the Court should find that the general orders, setting forth policies and procedures of the Reading Police Department, are legitimate matters of public concern, not subject to the federal executive privilege, and not regarded as confidential under the Pennsylvania Right-to-Know Law. Furthermore, the Court should find that it is an inappropriate burden for Plaintiffs to incessantly file these documents under seal and it is contrary to public policy to prohibit Cornerstone Law Firm, LLC from using these documents in future, civil rights litigation. The facts and circumstances all show that the Stipulation of Confidentiality was improvident as applied to policies and procedures and should be modified accordingly as shown in the proposed order.

### A.  The General Orders are Legitimate Matters of Public Concern.

Citizens have a legitimate concern in the operations of their government, and a municipal police department is no exception. Under the familiar standard articulated in <u>Monell v. Dep.'t of Soc. Servs.</u>, 436 U.S. 658 (1978), a municipal government is not vicariously liable for the actions of its employees unless it is shown to have adopted an unconstitutional policy or custom. In litigation under 42 <u>U.S.C.</u> § 1983, disclosure of written policies and procedures by municipal police departments is a regular occurrence and it is improper, and contrary to efficient judicial administration, for these Defendants to demand confidentiality or nondisclosure of such information. The public has a right to know such information, so that victims of police violations of civil rights may have access to the courts and that policymakers may be asked by the public to modify or change their policies or adopt new policies. This factor is weighty under <u>Pansy</u> that the general police orders, setting forth policy and procedure, should not be confidential. In particular, the Plaintiffs' desire to argue before this Court whether General Order No. 602, Part III(C)(2) sets forth an unconstitutional policy relative to warrantless arrests. [Ex. A, Bates No. Reading 000098]. The contents of that Order, and the Court's ruling on the merits, should be a matter of public record

rather than sealed.

The Court should also find that even the policies marked "CONFIDENTIAL," such as General Order No. 402 (Chain of Command) [Bates No. Reading 000073 to 76] and General Order No. 1402 (Internal Affairs Investigation) [Bates No. Reading 000083 to 89], are legitimate matters of public concern. For the internal affairs investigation, the City of Reading would want the public to know of this policy because it informs the public of an additional, administrative remedy with the Reading Police Department if there was misconduct involving an officer. General Order No. 1402 does not create any unfair advantages to any person merely by disclosure to the public.

For these same reasons, it is an improper use of the Court's protective powers and entirely mercenary on the Defendants' part to indirectly restrict the public's access to counsel by prohibiting Cornerstone Law Firm, LLC from using the same information in future cases. The Defendants want to use discovery orders to gradually make themselves judgment-proof by incrementally disabling members of the plaintiffs' bar from representing future litigants with similar civil rights claims where the general orders would be relevant. Under the good faith balancing of interests articulated in Pansy and its progeny, restricting the availability of the plaintiffs' bar for federal civil rights cases is never an end in itself. Thus, if the material in question is not privileged or confidential, and is a legitimate matter of public concern, then nothing within the Stipulation of Confidentiality may restrict the ability of Cornerstone Law Firm, LLC to use the same material in future lawsuits.

### B.     There is No Federal Executive Privilege Here.

This case does not involve a matter of national security. Federal law does not recognize any privilege in general policies of a municipal police department. "[T]he public has the strongest interest in maintaining the confidentiality of police files when those files concern an ongoing criminal investigation." Crawford v. Dominic, 469 F. Supp. 260, 264 (E.D. Pa. 1979). But such

8

privilege does not apply to policies, procedures, and training materials. Casaccia v. City of Rochester, 2020 U.S. Dist. LEXIS 37585, at *17-19 (W.D.N.Y. Mar. 3, 2020) (compelling disclosure by the City of Rochester). "In the absence of controlling authority, the undersigned will not recognize an expansion of the law enforcement privilege to include documents or manuals containing law enforcement policies and procedures." United States v. Charles, 2008 U.S. Dist. LEXIS 102918, at *8 (W.D. La. Dec. 9, 2008).

Here, as filed under seal in Exhibit A, the Court should be satisfied that the general orders of the Reading Police Department are entirely unconnected with any individual criminal investigation, ongoing or not. These are general policies and procedures only and are not privileged under federal law.

    **C.**    **The Supreme Court of Pennsylvania Recognizes that Law Enforcement Policies and Procedures Must be Disclosed under the Right-to-Know Law.**

The Stipulation of Confidentiality is inappropriate given the fact that general policies and procedures of the Reading Police Department can be requested and obtained under the Right-to-Know Law. 65 P.S. § 67.101 et seq. The Law exempts from disclosure a record "relating to or resulting in a criminal investigation," id. § 67.708(b)(16). In construing this provision, the Supreme Court of Pennsylvania made clear that documents and electronic material in the possession of a law enforcement agency are not a per se investigation and whether it "contains criminal investigative material must be determined on a case-by-case basis." E.g., Pennsylvania State Police v. Grove, 161 A.3d 877, 894 (Pa. 2017) (motor vehicle recordings). Even as to criminal investigations, "the exceptions to disclosure of public records must be narrowly construed." Id. at 892 (quotation omitted). "The plain meaning of a 'criminal investigation' clearly and obviously refers to an official inquiry into a possible crime." Id. at 892-93. Disclosure of policy documents from a law enforcement agency were compelled by the Office of Open Records (OOR)

9

and upheld on appeal, in ACLU of Pennsylvania v. Pennsylvania State Police (*ACLU I*), 232 A.3d 654 (Pa. 2020) and ACLU of Pennsylvania v. Pennsylvania State Police (*ACLU II*), 300 A.3d 386, 395-96 (Pa. 2023). In that litigation, the ACLU had requested disclosure of the State Police's AR 6-9, which "establishes policies and procedures for PSP personnel when using social media monitoring software." ACLU I, 232 A.3d at 508. The OOR determined that this was a policy document, not related to any specific criminal investigation.

The same reasoning from the ACLU cases apply here. The documents under seal in Exhibit A are general policies and procedures and unconnected with any criminal investigation. Under Pansy, a strong presumption exists against maintaining the Stipulation of Confidentiality here.

### D. Defendants Cannot Show Reliance.

Defendants cannot show reliance, here, because the Court did not apply any balancing test in signing the Stipulation of Confidentiality. Instead of submitting the general policies and procedures to the Court for *in camera* review, defense counsel asked Plaintiff's counsel for a stipulation, representing that the same contained confidential information. This was improper, and reliance is not justified here. As the Third Circuit made express, "It would be improper and unfair to afford an order presumptive correctness if it is apparent that the court did not engage in the proper balancing to initially determine whether the order should have been granted." Pansy, 23 F.3d at 790 (quotation omitted).

## II. Proper Remedy.

The Court can enter an order, providing that no provision of the Stipulation of Confidentiality (ECF No. 16) will be construed as applying to the parties, or to Cornerstone Law Firm, LLC and its officers and employees, in respect of policies and procedures of the Reading Police Department and City of Reading. A proposed order to that effect is included.

## CONCLUSION

WHEREFORE, based on the forgoing, the Court should grant the Motion for Relief from Protective Order by Damon Atkins, Aden Rusfeldt, and Cornerstone Law Firm, LLC and sign the proposed order, providing that the Stipulation of Confidentiality (ECF No. 16) will not be construed as applying to the parties, to their counsel, or to Cornerstone Law Firm, LLC and its officers and employees, in respect of policies and procedures of the Reading Police Department and City of Reading; and such other relief as the Court deems necessary, just, or appropriate.

Respectfully submitted,

**CORNERSTONE LAW FIRM, LLC**

Dated: May 3, 2024   By:   /s/ Joel A. Ready
Joel A. Ready, Esquire
PA Attorney I.D. # 321966
8500 Allentown Pike, Suite 3
Blandon, PA 19510
(610) 926-7875