IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAMON ATKINS,<br>                Plaintiff,<br><br>v.<br><br>CITY OF READING, et al.,<br>                Defendants. | C.A. No. 5:23-CV-02732-JMG |

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**STATEMENT OF RELEVANT FACTS**

Damon Atkins incorporates by reference his Statement of Undisputed Material Facts, filed contemporaneously with this Brief.

**STANDARD OF REVIEW**

Summary judgment is due, in whole or in part, where there is no genuine issue of material fact. Fed. R. Civ. P. 56(a). The record and all inferences drawn therefrom must be viewed in a light most favorable to the nonmovant. United States v. Diebold, 369 U.S. 654, 655 (1962). Summary judgment cannot be avoided through "some metaphysical doubt" on the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

**ARGUMENT**

**I.   Sgt. Bradley T. McClure is Liable to Plaintiff for First Amendment Retaliation, Reserving Trial on Damages and Punitive Damages.**

This is a rare case where a police officer managed to do the opposite of everything required by the First Amendment of the U.S. Constitution and all controlling judicial precedents thereunder. There is no genuine issue of material fact as to Defendant McClure's liability to Plaintiff for First Amendment retaliation, 42 U.S.C. § 1983, and trial should therefore be reserved as to damages and punitive damages. To establish a retaliation claim under the First Amendment, a plaintiff must

1

prove: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action. Thomas v. Independence Township, 463 F.3d 285, 296 (3d Cir. 2006).

Here, all three elements are met and Sgt. McClure has no genuine issue of material fact as can warrant a defense on liability according to law. Atkins engaged in constitutionally protected conduct. McClure arrested him for doing so, and that is sufficient to deter a person of ordinary firmness from exercising his constitutional rights. The causal link here is stronger than in many other cases — an arrest within 30 seconds after Atkins arrived at the scene and where McClure had never met him before.

### A.   Atkins' Speech was Protected and There is No Genuine Defense of Time, Place, or Manner Restriction.

On June 3, 2023, Atkins was peaceably assembled on the southside of Washington Street, opposite City Hall. He had a legal right to be where he was. Sgt. McClure and officers Courtney Dupree and Paige Stuart stood in Washington Street, thereby safely separating the protesters on the southside and the event attendees and counterprotesters on the northside. There were no ordinances by the City of Reading which restricted Atkins' distance from the permitted event or how audible his voice should have been. Sgt. McClure admits that Atkins stayed on the sidewalk and never entered into the street itself. If McClure had any reasonable time, place, or manner defenses, if any at all, then the same are subject to heightened scrutiny. "[S]peech restrictions embodied in the form of oral police directives present a greater risk of arbitrary enforcement than legislative enactments, justifying a more searching review." Snell v. City of York, 564 F.3d 659, 669 (3d Cir. 2009). In that context, the judiciary "will apply **heightened scrutiny**, upholding the restriction only if it burdens no more speech than necessary to serve the interest asserted." Id.

(citing <u>Madsen v. Women's Health Ctr.</u>, 512 U.S. 753, 765 (1994) (emphasis added)).

First of all, Atkins was then engaged in protected, religious speech under the First Amendment of the U.S. Constitution. He held a sign which contained Bible verses, "Jesus Said Go and Sin No More," on one side and, "Jesus Said I am the Way, the Truth, and the Life." For the latter verse, the Court may judicially notice *John* 14:6 from the King James Version, "Jesus answered, I am the way and the truth and the life. No one comes to the Father except through me." For the former Bible verse, the Court may judicially notice *John* 8:11 (KJV), where Jesus says to the adulteress, "Neither do I condemn thee: go, and sin no more." Additionally, Atkins wore a t-shirt which contained the words, "You must be BORN AGAIN," and a hat which read, "I ❤ Jesus," containing the heart symbol.

The fighting words doctrine is limited to "***face-to-face words*** plainly likely to cause a breach of the peace . . ." <u>Chaplinsky v. New Hampshire</u>, 315 U.S. 568, 573 (1942) (emphasis added). "The unprotected category of speech called 'fighting words' is an extremely narrow one." <u>Johnson v. Campbell</u>, 332 F.3d 199, 212 (3d Cir. 2003) The doctrine is limited to (1) face-to-face confrontations, not a public speech directed at a crowd or its hecklers, and (2) words that "must be nothing less than an invitation to exchange fisticuffs." <u>Id.</u> (quotation omitted). It cannot reach pure speech if it "causes emotional injury." <u>Purtell v. Mason</u>, 527 F.3d 615, 624 (7th Cir. 2008). In <u>Snyder v. Phelps</u>, 562 U.S. 443 (2011), Fred Phelps and members of the Westboro Baptist Church, in Kansas, flew to Westminster, Maryland, to form a picket line on public lands adjacent to an ongoing funeral of Marine Lance Corporal Matthew Snyder. <u>Id.</u> at 447-48. The latter was killed in the Iraq War. <u>Id.</u> Standing roughly 1,000 feet from the church where the funeral was held, the Westboro picketers carried signs that stated, "God Hates the USA / Thank God for 9/11," "America is Doomed," "Don't Pray for the USA," "Thank God for IEDs," "Thank God for Dead Soldiers,"

3

"Pope in Hell," "Priests Rape Boys," "God Hates You." Id. at 448. The Snyder family sued Phelps and the picketers for the intentional infliction of emotional distress and obtained a verdict for millions of dollars. The defendants interposed the First Amendment as a defense. Id. at 447-48.

The Court ruled in favor of the Westboro Baptists. Id. at 461. First, the speech was protected under the First Amendment and outside the scope of the fighting words doctrine. Id. at 451 n.3. In so doing, the Court reasoned as follows: (1) The First Amendment protects speech even if it can "inflict great pain" on an individual or a group of individuals — there, the grieving family of a fallen, honorable member of the U.S. Marine Corps, who served his country in the Iraq War. Id. at 460-61. (2) In context of public speeches and public demonstrations, marches, or picketing, it is not a "personal attack" that the Westboro Baptists made an example out of Lance Corporal Matthew Snyder in order to convey a larger, religious message. Id. at 455. The Court reasoned the picketing occurred in context of religious viewpoints the Westboro Baptists have held for several years, namely, that America was becoming judged for its toleration of homosexuality and the evils by the Catholic Church. And, "There was no pre-existing relationship or conflict" between the Westboro Baptists and Matthew Snyder "that might suggest Westboro's speech on public matters was intended to mask an attack on Snyder over a private matter." Id.

In other words, when public speeches and public demonstrations, marches, or picketing may single out a person, to make an example out of that person, the same "relates to broad issues of interest to society at large, rather than matters of purely private concern." Id. at 454.

Here, Atkins was not face-to-face with any of the event attendees and his religious speech does not and cannot be equated with fighting words. From the Declaration of Independence — where rights are "inalienable" as endowed by the "Creator"[1] — America's history at the time of

---

[1] Declaration of Independence, para. 2 (U.S. 1776).

4

the Founding, as well as the Preamble[2] and Declaration of Rights under the Pennsylvania Constitution,[3] and where the Due Process Clause protects "the concept of ordered liberty" measured at the time the Fourteenth Amendment was ratified, Washington v. Glucksberg, 521 U.S. 702, 721 (1997), there is no universe where McClure can assert that Bible verses and the content of Christian religious speech, which were commonplace at the time of America's Founding, can be equated as unprotected. That flies in the face of more than 300 years of American history and practice of religious toleration and the First Amendment promise for the free exercise of religion. Christian concepts of the existence of God, the historical figure of Jesus Christ, the sinfulness of the practice of homosexuality, and a future state of rewards and punishments called "heaven" and "hell," are not novelties in the slightest in American culture. Society can change but the rights protected under the First Amendment do not. There is no doubt that the content of Atkins' speech was protected, even if the event attendees had regarded it as offensive.

Under the First Amendment, "Giving offense is a viewpoint" Matal v. Tam, 582 U.S. 218, 243 (2017), and the "mere fact that expressive activity causes hurt feelings, offense, or resentment does not render the expression unprotected." R.A.V. v. St. Paul, 505 U.S. 377, 414 (1992). "**Listeners' reaction to speech is not a content-neutral basis for regulation**." Forsyth County v. Nationalists Movement, 505 U.S. 123, 134 (1992) (emphasis added). "[T]he government may not prohibit speech under a 'secondary effects' rationale based solely on the emotive impact that its offensive content may have on a listener," Saxe v. State Coll. Area Sch. Dist., 240 F.3d 200, 209 (3d Cir. 2001). "The emotive impact of speech on its audience is not a 'secondary effect.'" Id.

---

[2] Pa. Const., pmbl. ("grateful to Almighty God" and "humbly invoking His guidance . . .").
[3] Pa. Const., art. I, § 4 ("No person who acknowledges the being of a God ***and a future state of rewards and punishments*** shall, on account of his religious sentiments, be disqualified to hold any office or place of trust or profit under this Commonwealth." (emphasis added)).

5

(quoting Boos v. Barry, 485 U.S. 312, 321 (1988)). Based on the foregoing, speech is protected even if the listener finds it insulting. Here, McClure equated the viewpoints that McClure had on his signs and clothing, as well as his speech about persons "burning in hell," as "hateful," "judgmental," "antagonistic," and "insults." McClure considered the sign held by Atkins, with Bible verses, as an "anti-gay slogan." All of that constitutes viewpoint discrimination.

Where McClure thought that Atkins was "trying to get a reaction from the crowd," that, too, is a content-based discrimination. As stated in the foregoing authorities, the emotive impact on the crowd is precisely the point of having the First Amendment. Our speech can, does, and will have such effect and is intended so to be. Atkins did not advocate for any unlawful act and McClure cannot defend under a partisan theory that it "leads to" unlawfulness. The U.S. Supreme Court held, "The mere tendency of speech to encourage unlawful acts is not a sufficient reason for banning it." Ashcroft v. Free Speech Coalition, 535 U.S. 234, 253 (2002). If the speaker does not specifically advocate for "any action," then the speaker's words "could not be punished by the State on the ground that they had a tendency to lead to violence." Hess v. Indiana, 414 U.S. 105, 109 (1973) (quotation omitted).

Where, as here, McClure made his decision to arrest Atkins based on viewpoint and content of Atkins' speech, such restrictions "are presumptively invalid and subject to strict scrutiny." Ysursa v. Pocatello Educ. Ass'n, 555 U.S. 353, 358 (2009) (citation omitted). If the law is addressed to speech "based on its content, it must be narrowly tailored to promote a compelling Government interest." United States v. Playboy Entertainment Group, 529 U.S. 803, 813 (2000). "If a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative." Id.

Next, where the Atkins' speech was protected, Sgt. McClure does not have any genuine

6

defense of any reasonable time, place, or manner restriction.

Atkins was arrested for (1) saying, "Yo, God is not" and (2) projecting his voice so as to be heard by the event attendees for the 1st Reading Pride March & Rally. A categorical ban on any speaking by Atkins is an "inadequate" mode of communication, Members of City Council v. Taxpayers for Vincent, 466 U.S. 789, 812 (1984) (citations omitted), and fails strict scrutiny. The record doesn't establish that Atkisn had "yelled," rather than simply projected his voice so as to be heard, but the outcome is no different: "Even if he did yell or speak rather loudly, the volume of his voice might not have been unreasonable." Kennedy v. City of Villa Hills, 635 F.3d 210, 215 (6th Cir. 2011). An unreasonable noise is generally restricted to "approaching someone and screaming," Diener v. Reed, 77 F. App'x 601, 609 (3d Cir. 2003) (citing Commonwealth v. Mastrangelo, 414 A.2d 54, 58 (Pa. 1980)). "The Superior Court of Pennsylvania has identified four factors relevant to determining whether a person has engaged in disorderly conduct by making unreasonable noise: (1) the volume of the noise; (2) the duration of the noise; (3) the time of day; and (4) whether the noise was reported to the police." McNeil v. City of Easton, 694 F. Supp. 2d 375, 391 (E.D. Pa. 2010) (citing Commonwealth v. Maerz, 879 A.2d 1267 (Pa.Super. 2005)). A woman's single outburst of shouting, while outdoors at and prior to ordinary sleeping hours, was insufficient. Commonwealth v. Maerz, 879 A.2d 1267 (Pa.Super. 2005).

That the 1st Reading Pride March & Rally was a permitted event does not change the outcome. The gravamen of a special event permit is that the police have "an interest in ensuring that a permit-holder can use the permit for the purpose for which it was obtained," Startzell v. City of Philadelphia, 533 F.3d 183, 198-99 (3d Cir. 2008). But it was held in Startzell, (1) a protestor cannot be moved simply because the permit-holder does not want him there, id. at 199 (discussing Parks v. City of Columbus, 395 F.3d 643 (6th Cir. 2005)); and (2) police can move protesters,

7

including by way of force if necessary, if they use loud bullhorns or megaphones to drown-out the permitted speech or stand in the middle of the walkway or path of the parade. Id. at 199. Where the government attempts to justify its actions on the basis of vindicating another person's constitutional right, an actual conflict must be shown, "[I]n no world may a government entity's concerns about phantom constitutional violations justify actual violations of an individual's First Amendment rights." Kennedy v. Bremerton Sch. Dist., 142 S. Ct. 2407, 2432 (2022).

With these authorities in mind, as to noise violations and permitted events, the record fails heightened scrutiny for the following reasons: (1) the event had not yet started; (2) the event organizer had a PA System that could drown out Atkins; (2) Atkins stood on the southside of Washington Street, where he wasn't approaching someone and screaming as described in Diener; (4) he did not block the path of the parade; and (5) the event organizers did not voice any complaints to Sgt. McClure or the police that Atkins was preventing their event from starting or carrying on. McClure admits, as he must, that the event had not started when Atkins spoke. That is fatal. The fact of a permitted event, therefore, does not alter the outcome because there was no actual conflict of rights shown on this record.

Based on the foregoing, McClure does not have any genuine time, place, or manner defense and the record unequivocally establishes that the balance of the decision to arrest was based on the viewpoint and content of Atkins' speech. Sgt. McClure saw the religious content of Atkins' sign and equated a Bible quote as an "anti-gay slogan." After having prophylactically warned Atkins, and hearing Atkins assert his rights and talk about people "burning in hell," McClure assumed that anything Atkins would have said, if he had completed his sentence, would have been grounds for arrest under the offense of Disorderly Conduct. But under Pennsylvania law, the "disorderly conduct statute may not be used to punish anyone exercising a protected First Amendment right."

Commonwealth v. Mastrangelo, 414 A.2d 54, 58 (Pa. 1980).

The event attendees and counterprotesters never became unruly here. The police had the situation under control. McClure, therefore, had no justification to silence Atkins through some hypothetical, alternate universe where, in McClure's words, everything would "turn into a circus." Even if the crowd had become angry and unruly, the speech is still protected under the Heckler's Veto cases. These precedents "tell us that police cannot punish a peaceful speaker as an easy alternative to dealing with a lawless crowd that is offended by what the speaker has to say." Bible Believers v. Wayne County, 805 F.3d 228, 250 (6th Cir. 2015) (en banc) (discussing Edwards v. South Carolina, 372 U.S. 229 (1963), Cox v. Louisiana, 379 U.S. 536 (1965), and Gregory v. Chicago, 394 U.S. 111 (1969)). "[T]his is true when it appears that a crowd may turn to rioting, or even in the face of actual violence," id. at 251 (citations omitted).

McClure thought he could make a value judgment whether it was proper for Atkins and his protesters to have been there at all. He said, "I don't understand why [the protesters] even showed up, why they felt it necessary to show up and berate people." McClure's body camera captured his goading of Matthew Wear (i.e., "Does it really affect your life that much? No, it doesn't.") and his goading of Atkins (i.e., "They're clapping for you, buddy! They're clapping for you! You made them more proud!"). This, too, is a prohibited content- or viewpoint-based discrimination that violates the First Amendment. Government actors cannot engage in "an ad hoc balancing of relative social costs and benefits" of particular speech because the First Amendment "itself" has done that, reflecting " a judgment by the American people that the benefits of its restrictions on the Government outweigh its costs. United States v. Stevens, 559 U.S. 460, 470 (2010). Stevens therefore means, "Speech cannot be criminalized merely because others see no value in it." State v. Burkert, 174 A.3d 987, 1000 (N.J. 2017). "At the heart of the First Amendment lies the principle

9

that each person should decide for him or herself the ideas and beliefs deserving of expression, consideration, and adherence." Turner Broadcasting Sys. v. FCC, 512 U.S. 622, 641 (1994). "Government action that stifles speech on account of its message, or that requires the utterance of a particular message favored by the Government, contravenes this essential right." Id.

At summary judgment, the U.S. Supreme Court instructs trial courts to disregard a "visible fiction" when deposition testimony is patently contradicted by video evidence. Scott v. Harris, 550 U.S. 372, 380 (2007). Here, besides Atkins' deposition testimony, we have two videos disproving McClure's deposition testimony that Atkins was yelling at the crowd before McClure gave a warning. It's a complete, visible fiction. McClure's Incident Report asserted that this statement was derogatory, "Yo, God is not," where it clearly is not. The principle of *falsus in uno, falsus in omnibus* is seen here. Moreover, where McClure failed to record this interaction, despite having a body camera and microphone, the inference arises that the lost evidence "would have been unfavorable to the position of the offending party." Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 78 (3d Cir. 1994). "At summary judgment, the trier of fact generally may receive the fact of nonproduction or destruction of relevant materials as evidence that the party that has prevented production did so out of the well-founded fear that the contents would harm him." Jutrowski v. Township of Riverdale, 904 F.3d 280, 292 (3d Cir. 2018). Based on the foregoing, no rational factfinder can accept a false narrative that Atkins was yelling at the crowd prior in time.

From the video evidence and Atkins' deposition testimony, the burden of production has shifted to McClure to present a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). Even if the Court hypothetically assumed that Atkins was yelling prior in time, because the event had not yet started and because McClure could not recall with any specificity as to what was said, then McClure cannot carry any burden of production why that speech was,

likewise, unprotected. McClure cannot present a genuine issue of material fact that survives strict scrutiny. Summary judgment cannot be avoided through "some metaphysical doubt" on the facts. <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986). Affidavits or deposition testimony that are "essentially conclusory and lacking in specific facts" are "inadequate to satisfy the movant's burden." <u>Maldonado v. Ramirez</u>, 757 F.3d 48, 51 (3d Cir. 1985).

Finally, McClure cannot avoid summary judgment by restating legal conclusions through the leading of defense counsel. <u>Maldonado</u>, 757 F.3d at 51. Whether by way of affidavits or deposition testimony, where a deponent "contradicts earlier deposition testimony without a satisfactory or plausible explanation, a district court may disregard it at summary judgment in deciding if a genuine, material factual dispute exists." <u>Daubert v. NRA Group, LLC</u>, 861 F.3d 382, 391 (3d Cir. 2017) (citations omitted). In the Third Circuit, "we ad here to a flexible approach, giving due regard to the surrounding circumstances." <u>Id.</u> (citations and internal quotations deleted). If a witness "shows she was confused at the earlier deposition or for some other reason misspoke," then "the subsequent correcting or clarifying affidavit may be sufficient to create a material dispute of fact." <u>Id.</u> at 392 (citations and internal quotations deleted). The same result is attained "if there's independent evidence in the record to bolster an otherwise questionable affidavit." <u>Id.</u>

Here, the totality of McClure's deposition testimony on direct examination admits viewpoint and content based discrimination. He therefore cannot contradict that earlier testimony where defense counsel asked him, as leading, legal conclusions:

> Q.   The content of [Atkins'] speech was irrelevant to the reason that you arrested him for disorderly conduct. Is that correct?
>
> A.   Well, I felt the content of his speech was designed to antagonize the crowd, which is why he was arrested.
>
> Q.   Okay. I should clarify. It wasn't because of his viewpoint?

    A.    No.

[App. 86 (McClure Dep. Tr. 133:21-25 to 134:1-4)]. As shown in McClure's own body camera, a pattern of First Amendment violations is established in this case, before Atkins even arrived, where McClure unjustifiably threatened to arrest Matthew Wear for uttering "insults," based on the religious viewpoints of Wear, before the event had begun.

Trial is properly reserved for damages and punitive damages here. For purposes of punitive damages, whether McClure acted with a reckless or callous disregard of, or indifference to, the rights of others, Keenan v. City of Philadelphia, 983 F.2d 459, 469-70 (3d Cir. 1992), the jury may consider the video evidence, including the body camera footage on his conduct towards Matthew Wear, whether McClure intentionally lied in writing the Incident Report and during his deposition, as well as McClure's goading of Matthew Wear and Damon Atkins.

    B.    **The Affirmative Defense of Qualified Immunity Fails.**

There is no genuine issue of material fact on the affirmative defense of qualified immunity. Under that doctrine, "this court does not require relatively strict factual identity between applicable precedent and the case at issue. [S]ome but not precise factual correspondence to precedent would be required." Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 726 (3d Cir. 1989) (citations and internal quotations deleted). By invoking qualified immunity, these Defendants distort caselaw into some sort of unwritten Speech Code. That cannot be correct. Every reasonable police officer in America knows, or should know, that the First Amendment prohibits speech codes, whether enacted "by legislatures, courts, or dominant political or community groups." Terminiello v. Chicago, 337 U.S. 1, 4-5 (1949). "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." West Virginia Bd. of Educ. v. Barnette, 319 U.S. 624, 642 (1943).

All of the caselaw cited in Subpart A was firmly established before June 3, 2023. No reasonable police officer can obtusely feign ignorance here. Under concepts of ordered liberty under the Due Process Clause of the Fourteenth Amendment, McClure cannot assert, contrary to more than 300 years of American history and practice of religious toleration, that merely uttering core religious beliefs in the Christian religion is unprotected speech if the listener found it offensive, insulting, or antagonistic. Based on the foregoing, the affirmative defense of qualified immunity is no bar to the entry of summary judgment in favor of Plaintiff.

## II. Sgt. Bradley T. McClure is Liable to Plaintiff for Fourth Amendment Violation, Reserving Trial on Damages and Punitive Damages.

There is no genuine issue of material fact as to Defendant McClure's liability to Plaintiff for a Fourth Amendment violation, 42 U.S.C. § 1983, and trial should therefore be reserved as to damages and punitive damages.

Generally, the Fourth Amendment protects "[t]he right of the people to be secure in their persons," among other things. U.S. Const., amend. IV. That is implicated where, by "show of authority," a government actor terminates or restrains one's "freedom of movement." Brendlin v. California, 551 U.S. 249, 254 (2007). "A warrantless arrest of an individual in a public place for a felony, or a misdemeanor committed in the officer's presence, is consistent with the Fourth Amendment if the arrest is supported by probable cause." Maryland v. Pringle, 540 U.S. 366, 370 (2003). Involuntarily handcuffing a person and taking him to another location, including a police station, is an arrest. Kaupp v. Texas, 538 U.S. 626, 630 (2003).

Here, McClure arrested Atkins, without a warrant, for the offense of Disorderly Conduct, transported him to a police station, and detained him. Therefore, to be lawful under the Fourth Amendment, there had to have been probable cause for Disorderly Conduct. Under Pennsylvania law, the "disorderly conduct statute may not be used to punish anyone exercising a protected First

13

Amendment right." Commonwealth v. Mastrangelo, 414 A.2d 54, 58 (Pa. 1980). Because McClure violated Atkins' First Amendment rights, there likewise was no probable cause as a matter of law under the Fourth Amendment to have arrested and detained Atkins.

McClure raises the affirmative defense of good faith belief that probable cause exists. [ECF No. 10, at 15]. "The Fourth Amendment tolerates only *reasonable* mistakes, and those mistakes — whether of fact or of law — must be *objectively* reasonable. We do not examine the subjective understanding of the particular officer involved." Heien v. North Carolina, 574 U.S. 54, 66-67 (2014) (emphasis in original). Here, nothing in the record establishes a reasonable mistake. Because probable cause was subsumed within the First Amendment analysis, whether McClure had a good faith belief that probable cause existed is, likewise, subsumed within qualified immunity and it fails for the same reasons stated above in Part I.B. All the precedents which establish the unlawfulness of what McClure did were well-settled before June 3, 2023.

**III.    Sgt. Bradley T. McClure is Liable to Plaintiff for Malicious Prosecution, Reserving Trial on Malice, Damages and Punitive Damages.**

Plaintiff is entitled to summary judgment for the malicious prosecution claims under Counts Three (42 U.S.C. § 1983) and Eight (Pennsylvania common law) of the Complaint. To prevail in a Section 1983 malicious prosecution claim, "a plaintiff must show: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." DiBella v. Beachwood, 407 F.3d 599, 601 (3d Cir. 2005) (quotation omitted). "[A] section 1983 malicious prosecution claim may also include police conduct that violates the Fourth Amendment, the procedural due process clause or other explicit text of the Constitution." Torres v. McLaughlin,

14

163 F.3d 169, 173 (3d Cir. 1998). Under Pennsylvania law, the tort has the same elements "however, there is no requirement to prove a deprivation of liberty." Henderson v. City of Philadelphia, 853 F. Supp. 2d 514, 518 (E.D. Pa. 2012) (citing Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 791 (3d Cir. 2000)).

Here, all elements are met, and trial can be reserved for damages and punitive damages. McClure filed a Criminal Complaint for Disorderly Conduct, as a misdemeanor grading. The filing of a Complaint institutes a criminal action under Pennsylvania law. Pa. R. Crim. P. 502. The District Attorney withdrew the charge, which terminated the proceeding in favor of Atkins. It is well-settled "that abandonment of charges by the prosecutor is sufficient to satisfy the favorable termination element of a civil claim for malicious prosecution." Shurelds v. Silo, Div. of Cyclops Corp., 1987 U.S. Dist. LEXIS 2300, at *5 (E.D. Pa. Mar. 27, 1987) (citations omitted). There was no probable cause for the criminal proceeding, and McClure acted for a purpose other than bringing Atkins to justice, by violating Atkins' First and Fourth amendment rights on the same grounds as stated in Parts I and II, supra. Atkins suffered a deprivation of liberty, namely, becoming arrested and taken to the police station.

Because McClure acted for a purpose other than bringing the plaintiff to justice by violating Atkins' First and Fourth Amendment rights, the Court need not consider the alternative ground whether McClure acted maliciously. However, this record establishes that element as well. "Malice may be inferred from the absence of probable cause." Washington v. Brown, 2017 U.S. Dist. LEXIS 69565, at *21 (E.D. Pa. May 5, 2017) (quoting Lippay v. Christos, 996 F.2d 1490, 1502 (3d Cir. 1993), abrogated on other grounds, Albright v. Oliver, 510 U.S. 266 (1994))). Malice may also be shown by "ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose." Id. (quotation omitted).

McClure accused Atkins of Section (a)(1) of Disorderly Conduct. Under that provision, "A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: *** (1) engages in fighting or threatening, or in violent or tumultuous behavior." 18 Pa.C.S. § 5503(a)(1). The offense is a misdemeanor "if he persists in orderly conduct after warning or request to desist." Id. Here, the video evidence unequivocally demonstrates that Atkins did not engage in any fighting or threatening or violent or tumultuous behavior. At summary judgment, the Court cannot accept any "visible fiction" by McClure contradicted by the video evidence. Scott v. Harris, 550 U.S. 372, 380 (2007). This is not a case where McClure missed probable cause by an inch, he missed it by a mile to such a gross extent that McClure could not have seriously accepted the propriety of the prosecution.

The record demonstrates ill will here. The video evidence further shows McClure goading Matthew Wear and Atkins. McClure's body camera was activated and that recorded him goading Atkins, "They're clapping for you, buddy! They're clapping for you! You made them more proud!" [App. 98 (McClure Body Cam. 1:10 to 1:30)]. The record further shows that McClure made several false statements in the Incident Report, namely, that the statement, "Yo, God is not," is somehow "derogatory." That Bible verses on Atkins' sign were somehow an "anti-gay slogan." "[M]alice is shown" where, in commencing a criminal action, "an officer made false statements or omitted facts knowingly or with reckless disregard for the truth." Montgomery v. Saenz, 2018 U.S. Dist. LEXIS 212819, at *8 (D. Colo. Dec. 17, 2018) (citing Taylor v. Meacham, 82 F.3d 1556, 1563 (10th Cir. 1996)).

Therefore, as to Counts Three and Eight of the Complaint, summary judgment in favor of Plaintiff is proper on all elements of liability for malicious prosecution, reserving trial on damages and punitive damages. In the alternative, summary judgment for Plaintiff is proper on all elements

of liability other than malice.

### IV. Sgt. Bradley T. McClure is Liable to Plaintiff under the Torts of False Imprisonment and Assault and Battery, Reserving Trial on Damages and Punitive Damages.

Plaintiff is entitled to summary judgment as to liability for Counts Seven (False Imprisonment) and Nine (Assault and Battery), reserving trial on damages and punitive damages.

Under Pennsylvania common law, "The elements of false imprisonment are (1) the detention of another person, and (2) the unlawfulness of such detention." Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994). Probable cause to arrest is a complete defense, "regardless of whether the individual arrested was guilty or not." Id. Under Pennsylvania law, an arrest cannot be made for a misdemeanor unless committed in the presence of the arresting police officer. Pa. R. Civ. P. 502(2)(1). Under the tort of false imprisonment, a warrantless arrest can be made for felonies or, "if committed in the presence of the officer, a misdemeanor had been committed by the person taken into custody." Burford v. Richards, 58 Pa. Super. 8, 12-13 (1914). "No authority justifies an arrest without a warrant for a summary offense committed beyond the presence of an arresting officer in the absence of a statute giving that right." Commonwealth v. Trunzo, 589 A.2d 1147, 1150 (Pa.Super. 1991).

Under Pennsylvania law, "Assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." Renk v. City of Philadelphia, 641 A.2d 289, 293 (Pa. 1994) (quotation omitted). Ordinarily, there is no requirement for physical injury. Montgomery v. Bazaz-Sehgal, 742 A.2d 1125, 1130 (Pa.Super. 1999) ("[T]here need be no physical injury, but only some contact . . ."). "Implicit in the tort of battery is the recognition that an individual has a right to be free from unwanted and offensive or harmful intrusions upon his own body." Id. (quotation omitted). But there is an exception to that general rule: If an arrest is

17

otherwise lawful, "A police officer may be held liable for assault and battery when [the factfinder] determines that the force used in making an arrest is unnecessary or excessive." Renk v. City of Philadelphia, 641 A.2d 289, 293 (Pa. 1994). This standard applies if an officer is "making a lawful arrest" in the line of duty. Id. "The reasonableness of the force used in making the arrest determines whether the police officer's conduct constitutes an assault and battery." Id.

Here, Atkins was detained and the detention was unlawful for the same reasons stated in Parts I and II, supra. Furthermore, McClure is restricted to what was committed in his presence, which left only the statement, "Yo, God is not." As to assault and battery, all elements are met. As shown in the Video, McClure charged at Atkins, who witnessed the same, and McClure put his hands on Atkins and restrained him with handcuffs. Because the arrest was unlawful on the same grounds as Parts I and II, supra, there is no element for physical injury. However, even if the Court disagrees, the record shows that Atkins complained to McClure that the handcuffs were on too tight, and pain was experienced.

Therefore, as to Counts Seven and Nine of the Complaint, summary judgment in favor of Plaintiff is proper on all elements of liability for malicious prosecution, reserving trial on damages and punitive damages.

V.     **The Political Subdivision Tort Claims Act and the Balance of Remaining Affirmative Defenses All Fail.**

Defendant McClure, as employee of the City of Reading, invokes immunity under the Political Subdivision Tort Claims Act, 42 Pa.C.S. § 8541 et seq. [ECF No. 10 at 15]. Under the Act, individual, municipal employees remain personally liable for their conduct that constitutes "a crime, actual fraud, actual malice or willful misconduct," 42 Pa.C.S. § 8550, and "willful misconduct" is "synonymous with the term 'intentional tort.'" Renk v. City of Philadelphia, 641 A.2d 289, 293 (Pa. 1994) (quotation omitted). The torts of malicious prosecution, false

18

imprisonment, and assault and battery are intentional torts and therefore not covered by the Act. Hayes v. City of Philadelphia, 2005 U.S. Dist. LEXIS 27916, at *24 (E.D. Pa. Nov. 14, 2005) (malicious prosecution); DiSalvio v. Lower Merion Sch. Dist., 158 F. Supp. 2d 553, 562 (E.D. Pa. 2001) (assault and battery); RESTATEMENT (SECOND) OF TORTS § 35 (false imprisonment is an intentional tort). The affirmative defense fails.

Summary judgment can be granted on any "claim or defense," including any "part of each claim or defense," including affirmative defenses. Fed. R. Civ. P. 56(a). Civil Rule 8(c) permitted the Defendants to raise affirmative defenses in their Answer to the Complaint, but a review of the 27 affirmative defenses in ECF No. 10 show that nearly all are not genuine affirmative defenses and were otherwise addressed in the above arguments. We summarize the affirmative defenses by the table in Exhibit A, and the Court should find that Qualified Immunity, good faith as to probable cause, and the Political Subdivision Tort Claims Act were the only genuine affirmative defenses raised and adequately addressed in this brief.

In the pleadings, courts recognize it is procedurally improper for an Answer, or Reply, to raise fact defenses or "negative defenses" that simply restate the opposite of the adversary's burden of proof. Hubbell v. World Kitchen, LLC, 688 F. Supp. 2d 401, 422-23 (W.D. Pa. 2010). Genuine affirmative defenses are those where the law assigns the burden of proof onto the party raising the same. T. Levy Assocs. v. Kaplan, 2017 U.S. Dist. LEXIS 133021, at *9-10 (E.D. Pa. 2017). Defendant's affirmative defenses do not preclude summary judgment for Plaintiff.

**V.     Defendant Courtney Dupree (Deceased) Should be Dismissed from the Case.**

Co-Defendant Courtney Dupree (deceased) should be dismissed from the case. A Suggestion of Death was filed on the record on February 7, 2024 [ECF No. 18]. By operation of law, a deceased party must be dismissed if no motion is made within 90 days from the entry of the Suggestion, by any party or successor or representative, for the substitution of an estate. Fed. R.

Civ. P. 25(a)(1). That occurred here. No one desires for an estate to be substituted.

## CONCLUSION

**WHEREFORE**, based on the forgoing, the Court should grant Plaintiff's Motion for Partial Summary Judgment, as follows:

(A)   Entry of summary judgment on liability in favor of Plaintiff and against Defendant Bradley T. McClure, reserving trial on damages and punitive damages, as to Count One (First Amendment Retaliation), Count Two (Fourth Amendment Violation), Count Three (Malicious Prosecution), Count Seven (False Imprisonment), Count Eight (Malicious Prosecution), and Count Nine (Assault and Battery).

(B)   Dismiss Defendant Courtney Dupree (deceased) from the case.

(C)   Such other relief as the Court deems necessary, just, or appropriate.

    Respectfully submitted,

    **CORNERSTONE LAW FIRM, LLC**

Dated: May 17, 2024    By:    /s/ Joel A. Ready
    Joel A. Ready, Esquire
    PA Attorney I.D. # 321966
    8500 Allentown Pike, Suite 3
    Blandon, PA 19510
    (610) 926-7875